UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| MARILYN McDONOUGH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16-cv-11496-DJC |
| MEGAN BRENNAN and THE UNITED STATES POSTAL SERVICE, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

CASPER, J.                                                                                          November 2, 2018

## I.  Introduction

Plaintiff Marilyn McDonough ("McDonough") brings claims against Megan Brennan, the Postmaster General of the United States Postal Service ("USPS"), and USPS (collectively, "Defendants") for disability discrimination, failure to accommodate and retaliation.  D. 1.  The Defendants now move to dismiss for lack of subject matter jurisdiction and for summary judgment. D. 48.  For the following reasons, the Court ALLOWS the motion, D. 48.

## II.  Standard of Review

In evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court will take the "[complaint's] allegations of jurisdiction . . . as true unless denied or controverted by the movant." Torres-Negron v. J&N Records, LLC, 504 F.3d 151, 163 n.8 (1st Cir. 2007) (citation omitted).  If the movant's factual basis for challenging jurisdiction relates to the merits of the claim, "the trial court should grant the motion to dismiss 'only if the material jurisdictional facts

1

are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id. at 163 (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). "[I]f the facts relevant to the jurisdictional inquiry are not intertwined with the merits of the plaintiff's claim, 'the trial court may . . . weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Id. (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

The Court will grant summary judgment "only when the record reflects no genuine issues as to any material fact and indicates that the moving party is entitled to judgment as a matter of law." Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). A genuine dispute of material fact exists where the evidence with respect to that fact "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant "bears the burden of demonstrating the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). The Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (citation omitted).

## III. Factual Background

The following facts are undisputed unless otherwise noted.[1] McDonough has been a substitute letter carrier at the Haverhill, Massachusetts Post Office since 1980. D. 50 ¶ 1. In 1987,

---

[1] Under the Court's Local Rules, a party opposing summary judgment must include a "concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Local Rule 56.1. Failure to comply may result in the district court, in its discretion, deeming the facts set forth by the movant to be admitted. Foley v. Yacht Mgmt. Grp., Inc., No. 09-cv-11280-DJC, 2011 WL 4020835, at *3 (D. Mass. Sept. 9, 2011). Pro se parties are not exempt from the requirements to comply with Local Rules. Cardoso v. City of Brockton, No. 12-cv-10892-DJC, 2014 WL 6698618, at *24 n. 44 (D. Mass. Aug. 11, 2014). McDonough, who is pro se, did not submit a responsive statement of disputed facts are required by the Local Rules. D. 52, D. 53. The Court considered the memorandum and exhibits submitted by McDonough, D. 52, D. 53, to draw

McDonough fell at work and injured her back. D. 50 ¶ 2. Since then, McDonough has only worked four hours each workday and has received wage-loss benefits from the Department of Labor's Office of Workers Compensation Program ("OWCP"). D. 50 ¶ 2. In 2008, McDonough filed an employment discrimination claim against USPS, alleging disability discrimination, failure to accommodate a disability and retaliation. D. 50 ¶ 5. The putative disability in that suit was described as "chronic orthopedic problems related to her neck and back." D. 50 ¶ 5. The district court granted summary judgment to USPS on the ground that the putative disability did not qualify as a disability and that decision was affirmed by the First Circuit. McDonough v. Potter, No. 08-cv-12122-LTS, 2011 WL 13175459 (D. Mass. Mar. 31, 2011), aff'd, McDonough v. Donahoe, 673 F.3d 41 (1st Cir. 2012); D. 50 ¶ 6. In that case, the district court analyzed the issue of whether McDonough was disabled under the law as it existed prior to the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), because the court found that the ADAAA did not apply retroactively to claims arising from events occurring before January 1, 2009, the effective date of the ADAAA. McDonough, 2011 WL 13175459 at *1 n.4.

In 2010, McDonough filed another claim related to the same putative disability. D. 50 ¶¶ 8-9. The district court held, in adjudicating USPS's motion for summary judgment, that "[t]he only change in McDonough's condition [since the prior case] . . . is that in July 2007, her orthopedist judged her capable of lifting, pushing or pulling just 10 pounds, although in 2004-2005, the same orthopedist had found her capable of lifting twenty pounds and pulling and pushing without restriction," and that this change was "not of sufficient import to affect the conclusion reached in the prior case." McDonough v. Donohoe, 10-cv-11094-LTS, 2012 WL 4468486, at *8

---

out the facts that McDonough purports to dispute, notwithstanding McDonough's failure to comply with the Local Rules.

(D. Mass. Sept. 25, 2012). In this subsequent case, McDonough also asserted claims related to a putative disability of anxiety, but the district court concluded that her anxiety did not qualify as a disability. Id. at *9. The district court in that case also did not apply the new standards laid out in the ADAAA, again because it determined that those new standards did not apply retroactively. Id. at *8 n.7. The First Circuit affirmed the district court's opinion. McDonough v. Donohoe, No. 12-2453 (1st Cir. Aug. 26, 2013).

On October 3, 2012, the District Reasonable Accommodation Committee ("DRAC") held a meeting regarding McDonough. D. 53-7 at 25. The minutes to that meeting indicate that at that time, McDonough was working two hours a day "casing mail" (that is, sorting mail) and "on standby" for two hours a day but felt that she was capable of delivering mail. D. 53-7 at 25. The minutes note that McDonough "cannot get her truck license because the test takes 2 hours and [McDonough] cannot drive for 2 hours." D. 53-7 at 25. McDonough was interested in delivering Route 28, which could be delivered on foot from the office and was also interested in Route 13, although Route 13 "is a residential route going uphill with lots of stairs and may be beyond her restrictions." D. 53-7 at 26. The minutes conclude by stating that McDonough "would be afforded the opportunity to deliver on Route 28," but only "after updated medical documentation has been supplied." D. 53-7 at 27. The minutes also state that McDonough would "have to be observed on route [28] so that she does not exceed her restrictions" and that "[w]atching cannot be misunderstood as harassment by [McDonough]." D. 53-7 at 27.

McDonough, in her affidavit to the EEOC, stated that she worked Route 28 until 2014, at which point she suffered an on-the-job injury inside the post office to her rotator cuff. D. 53-7 at 34. She states that she was "fully cleared" to return to work in March 2015, but that during her time away, Route 28 had been assigned to a different carrier. D. 53-7 at 34-35.

4

McDonough took an absence of work following shoulder surgery in 2014 and returned to work in May 2015. D. 50 ¶ 12. On May 12, 2015, the Postmaster of the Haverhill Post Office, Donna Legro, held a meeting with McDonough regarding the route that McDonough would take upon her return. D. 50 ¶ 13. McDonough indicated that she preferred to deliver Route 28, but Legro stated that Route 28 was not within the work restrictions related to the 1987 accident, which restrict walking from more than two hours continuously. D. 50 ¶ 14. Legro expected McDonough to deliver Route 13. D. 50 ¶ 14. McDonough accepted the assignment, but indicated that she was doing so "under duress." D. 50 ¶ 16. On May 13, 2015, McDonough delivered Route 13, accompanied by her immediate supervisor, Keith Miller, who was there to ensure that the route did not violate any of McDonough's work restrictions. D. 50 ¶ 17. The same happened on May 14, 2015. D. 50 ¶ 18. On both days, Miller timed the amount of time that McDonough spent climbing stairs and he recorded that she spent 11 minutes and 43 seconds climbing stairs on May 13 and that she spent 9 minutes and 53 seconds climbing stairs on May 14. D. 50 ¶¶ 17-18.

McDonough, in her affidavit to the EEOC, contends that Route 13 "consists of mostly stairs" and includes much more than eleven minutes of stair climbing. D. 53-7 at 36. She states that she felt "tremendous pain in [her] right knee" "[w]ithin the first half hour of carrying Route 13," and "began to cry from the pain." D. 53-7 at 36. She alleges that Miller yelled at her to continue working or that he would send her home. D. 53-7 at 36. She states that, on May 14, she wore a knee brace, delivered Route 13 again, and, despite the knee brace, felt "increasing pain and was vocal about it" to Miller. D. 53-7 at 37.

On May 15, 2015, McDonough reported to work and requested that Legro provide her with a cart to load her truck with mail because she could not bend over. D. 50 ¶ 19. Legro replied that McDonough's work restrictions did not indicate that she was unable to bend over. D. 50 ¶ 19.

5

Legro attests that McDonough replied that the "restrictions did not matter" because Legro was "harming [her] anyway" and that McDonough pointed to her right knee, which was in a knee brace, while making this statement. D. 50-2 ¶ 8. Legro avers that she then asked what had happened to McDonough's knee and whether McDonough would be able to deliver the route and that McDonough replied that she would "deliver this route if [she had] to crawl." D. 50-2 ¶ 8. Legro then states that she instructed McDonough not to deliver the route, allegedly out of concern that McDonough might injure herself, and to punch "standby time," (i.e., compensable time that requires the employee to be present at the Post Office but does not require any work). D. 50-2 ¶ 9. McDonough, in her affidavit to the EEOC, agreed that she requested a cart and that Legro replied that McDonough's work restrictions did not reference bending, but contends that after that, Legro "suddenly began to yell 'you say that I'm harming you, so I'm causing you harm,'" and then yelled to Legro to sit at a table and not move. D. 53-7 at 38. McDonough also states, in the EEOC affidavit, that Legro then assigned McDonough to spend two weeks on standby in the office, not performing work of any kind, and then assigned McDonough to clerical work and mail sorting. D. 53-7 at 38-39.

On May 18, 2015, McDonough filed a claim for benefits under the Federal Employees' Compensation Act ("FECA") with the Office of Workers' Compensation Programs ("FECA") based on a purported injury sustained on May 13, 2015. D. 50 ¶ 21. In her claim, McDonough stated that she had been "forced to work beyond her restrictions" because she was required to climb "153 flights of stairs" and suffered "extreme pain in [her] right knee." D. 51-1 at 91. On July 13, 2015, the OWCP denied McDonough's claim, finding that McDonough "the evidence is not sufficient to establish that the event(s) occurred as you described," because "according to the statement from Keith Miller, you were timed at 9 minutes and 53 seconds of stair climbing" and

6

because McDonough "did not submit any medical evidence to establish that the diagnosed medical condition is causally related to the work injury or event." D. 51-1 at 97. On March 7, 2016, an OWCP hearing officer affirmed the denial of benefits. D. 50-1 at 99, 106.

## IV. Procedural History

On July 19, 2016, McDonough filed her complaint in the instant case. D. 1. The Defendants have now moved to dismiss for lack of subject matter jurisdiction and for summary judgment. D. 48. The Court heard argument and took the matter under advisement. D. 54.

## V. Discussion

McDonough, in her complaint, alleges two counts under the Rehabilitation Act: first, a discrimination claim of hostile work environment on the basis of a real or perceived disability, and failure to accommodate, on the basis of a disability consisting of "chronic orthopedic problems related to her neck and her back, and related symptoms," D. 1 at 5, and second, retaliation for filing a discrimination claim, D. 1 at 6. She alleges the discrimination and retaliation include being assigned to Route 13, which she contends led to a "torn meniscus to [her] right knee that requires surgery," the assignment of Route 28 to another employee, a change in the timing of her route, not being allowed to use a hand cart to deliver Route 13, and being yelled at by both Legro and Miller, among other incidents. D. 1 at 3-4. The Defendants contend that these claims are jurisdictionally barred, collaterally barred and that there is no genuine dispute of material fact regarding the merits of these claims. D. 49.

### A. Subject Matter Jurisdiction as to Failure to Accommodate Disability Claim

The Defendants first contend that McDonough's claim is a "collateral attack" on the OWCP decision to deny McDonough's claim under FECA. D. 49 at 16. "In addition to providing certain compensatory benefits, FECA requires federal employers to allow injured employees to return to their old positions or, if they can no longer perform their original duties, to offer them

7

reasonable alternative positions." Meester v. Runyon, 149 F.3d 855, 856 (8th Cir. 1998). Decisions by the Secretary of Labor "allowing or denying a payment" under FECA are "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b); see Paluca v. Sec'y of Labor, 813 F.2d 524, 528 (1st Cir. 1987). The Eighth Circuit, in Meester, held that the jurisdictional bar to review of the Secretary's decisions under FECA also extends to claims under the Rehabilitation Act where an employee claims that "the Department of Labor was wrong in directing her to accept [a particular] position" as "an alternative position offered under FECA [that] constitutes 'suitable work.'" Meester, 149 F.3d at 857 (quoting 5 U.S.C. § 8106(c)). It stated that "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision." Id. at 857. The decision in Meester has been relied upon by at least one district judge in this district in finding a jurisdictional bar to a claim under the Rehabilitation Act related to a similarly unsuccessful FECA claim. Stone v. Chao, 284 F. Supp. 2d 241, 246 (D. Mass. 2003) (holding that claims are jurisdictionally barred by FECA where the plaintiff "allege[s] that a position offered to her and certified as suitable by OWCUP failed to reasonably accommodate her handicap"); see D. 49 at 10-11 & n.1 (collecting cases).

The Defendants contend that McDonough's claims under Rehabilitation Act are, like the claims at issue in Stone, simply claims that a position identified by the OWCP as a reasonable accommodation do not in fact accommodate her disability. D. 49 at 16. McDonough replies that her FECA claim only concerned the recent injury to her knee and not the pre-existing disability related to her back. D. 52 at 2. Nevertheless, the gravamen of McDonough's FECA claim was

8

that she suffered significant pain delivering Route 13 because her pre-existing disability made her unable to perform that work, such that Route 13 was not suitable work in light of her pre-existing disability. D. 50-1 at 91. The OWCP rejected that claim, crediting Miller's statement that she was not forced to exceed her half-hour climbing restriction. D. 50-1 at 97. Thus, like the plaintiff in Stone, McDonough's failure to accommodate claim seeks review of a determination by FECA that Route 13 was a route within her restrictions – which this Court lacks subject matter jurisdiction to provide and her failure to accommodate claim is not properly before this Court.[2]

Since it is a closer call whether the determination by FECA disposes of all of McDonough's claims, not just the failure to accommodate, but the disability discrimination and retaliation claims as well, as the USPS claims it does, D. 49 at 18, the Court will turn to the Defendants' challenges to McDonough's disability discrimination and retaliation claims on other grounds as well.

### B. Collateral Estoppel as to the Disability Showing for the Discrimination Claim

The Defendants also contend that McDonough is estopped from contending that she is actually disabled, given that she previously and unsuccessfully raised the same contention regarding the same putative disability in her two prior federal lawsuits referenced above. D. 49 at 19. "The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or a different claim." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (citation omitted). "When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the

---

[2] McDonough also contends that her motive in filing the FECA claim was to document the injury, and therefore that her FECA claim does not jurisdictionally bar any element of this suit. D. 52 at 3. McDonough's motivations, however, do not affect the jurisdictional bar under FECA.

issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." Id.

McDonough contends that she is not estopped from relitigating the issue of whether she is disabled because of the statutory amendments to the definition of disability in the ADAAA. D. 52 at 4. Under governing law prior to the ADAAA, to qualify as disabled, a plaintiff needed to prove that she had a "physical or mental impairment which substantially limits one or more of [her] major life activities." McDonough, 2011 WL 13175459 at *1 (quoting 29 U.S.C. § 705(2) (2011)). The phrases "substantially limits" and "major life activities" were to be "strictly interpreted" to create a "demanding standard for qualifying as disabled." Id. (quoting Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002)). The ADAAA "superseded [the Supreme Court's decision in] Williams by expressly rejecting the Court's narrow interpretation of the terms 'substantially limits' and 'major life activity' in favor of a broader interpretation." E.E.O.C. v. AutoZone, Inc., 630 F.3d 635, 641 n. 3 (7th Cir. 2010). Under the regulations passed pursuant to the ADAAA, the key test is still whether an impairment substantially limits one or more major life activities, but "the term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. §1630.2(j)(1)(i). The Defendants conceded at the hearing, D. 54, that the new standard under the ADAAA governs McDonough's claim here. The legal determination of whether McDonough is disabled in this case is, therefore, not identical to the legal determination of whether McDonough was disabled in the prior cases due to the different, pre-ADAAA standard, so McDonough is not estopped from arguing here that she is disabled.

The Defendants also contend in their brief that McDonough's claims are barred by res judicata as well. D. 49 at 18-19. At the hearing, D. 54, however, they conceded that res judicata did not apply, given the intervening change in the standard for determining disability. The Court thus moves to the merits of McDonough's claims for disability discrimination and retaliation.

C. **Merits of Discrimination and Retaliation Claims**

McDonough brings claims of retaliation and disability discrimination. To establish a prima facie claim of retaliation, McDonough must show that "(i) [s]he undertook some protected conduct, (ii) [s]he suffered an adverse employment action, and (iii) that the two were causally linked." Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012). McDonough contends that she engaged in the protected conduct of making an EEOC call in 2012 regarding her restrictions and her disputes with Legro at that time and the protected conduct of calling EEOC on May 12, 2015, after Legro offered McDonough the new position on Route 13 following her return after shoulder surgery. D. 52 at 17. McDonough contends that she suffered the adverse actions of being made to deliver Route 13; Miller and Legro yelling at her; Legro denying her use of a mail cart; and other activities that took place upon McDonough's return to work in May 2015. D. 52 at 17.

A reasonable jury could not infer that the protected conduct that took place in 2012 was causally connected to the putative adverse employment actions that took place three years later in May 2015. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (stating that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity").

The only factual support that McDonough appears to offer for the contention in her brief that she made a call to the EEOC on May 12, 2015, D. 52 at 3 are phone records from that day which have the notation "EEO" indicated next to a phone number called on that day at 1:30 pm.

11

D. 53-7 at 48. Her EEOC affidavit contains no reference to any such call. D. 53-7 at 34-36. It is a party's obligation at summary judgment to point to specific facts in the record to create a genuine dispute of material fact, and even for a pro se party, that burden is not met by unsupported assertions in briefing. Palm v. Sisters of Charity Health, Sys., 537 F. Supp. 2d 228, 230 (D. Me. 2008). Even if the record did support the existence of such a call, that call, even as alleged to have occurred at 1:30 p.m., occurred after Legro had decided to reassign McDonough to Route 13, see D. 50-2 at 13-13 (notes of May 12, 2015 meeting indicating that the USPS meeting with McDonough about assignment to Route 13 lasted that day from 11 to approximately 11:24 a.m.). Accordingly, it cannot be concluded that the latter occurrence, this purported call to EEOC, caused the earlier occurrence of the putative adverse action of the reassignment to Route 13.

Even assuming *arguendo* that a reasonable jury could find such a causal link, the undisputed record does not show adverse action by USPS. The reassignment to Route 13 was not an adverse action. A reassignment is an adverse action only if it involves "significant[ly] different responsibilities" from the prior assignment and the change was "more disruptive than a mere inconvenience or an alteration of job responsibilities." Cherkaoui v. City of Quincy, 877 F.3d 14, 25 (1st Cir. 2017) (citations omitted). The reassignment to Route 13 was not an adverse employment action because the principle material difference that McDonough identifies between Route 13 and Route 28 is that Route 13 violated her work restrictions and Route 28 did not. D. 52 at 9-10.[3] Moreover, McDonough does not appear to argue that her removal from Route 13 to office work constituted an adverse action, which is consistent with her claim that Route 13 violates her work restrictions. D. 52 at 9-11, 15.

---

[3] McDonough does also contend that her schedule shifted and that the new posting included some additional clerical duties, but nothing in the record indicates that these changes amounted to significantly different responsibilities.

The remaining activities that McDonough identifies as putative adverse actions include being yelled at by Legro and Miller, being denied the use of a hand cart, an alleged change in schedule request being ignored in February 2016, and an alleged change to her route to include three additional buildings in July 2016. D. 52 at 9-14, 18. These remaining actions by the Defendants also do not rise to the level of an adverse action. None are actions of the type that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Billings v. Town of Grafton, 515 F.3d 39, 52 (1st Cir. 2008) (citation omitted). Examples of such actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (citation omitted). "[A]ctions like 'petty slights, minor annoyances, and simple lack of good manners will not [normally] create such deterrence.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 36–37 (1st Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (second alteration in original)). Isolated incidents of offensive verbal conduct do not rise to the level of a materially adverse action. Alvarado, 687 F.3d at 462. The denial of the mail cart was also an isolated event that does not rise to the level of an adverse action, given that McDonough was reassigned away from mail carrying duties immediately after the denial of the use of the mail cart. And finally, the alleged denial of a schedule change in February 2016 and the alleged route change in July 2016 took place too far after any May 2015 phone call to the EEOC to be plausibly considered casually connected to that protected activity. Thus, McDonough has failed to demonstrate a genuine issue of material fact regarding her retaliation claim.

To bring a claim for discrimination through a hostile work environment, McDonough must show that "(1) she was disabled as defined under the Rehabilitation Act, (2) she was subjected to

uninvited harassment, (3) her employer's conduct was based on her disability, (4) the conduct was so severe or pervasive that it altered the conditions of her work and created an abusive work environment, and (5) the harassment was objectively and subjectively offensive." McDonough, 673 F.3d at 46. McDonough's claim fails because, at a minimum, she cannot prove a disability.

Even if McDonough is not collaterally estopped from contending that she has a disability under the Rehabilitation Act, the undisputed record does not support such showing here, even post-ADAAA. Even with the broader interpretation of "substantially limits" and "major life activity" for the purposes of determining whether an impairment rises to the level of a disability, 29 C.F.R. § 1630.2(g), (i), (j), the uncontradicted record does not show that the impairments that McDonough relies upon here amount to a disability under that standard. She continues to perform her job as a (part-time) substitute letter carrier which including walking and some steep hills. D. 50 ¶¶ 1-3. McDonough does her own housework, mows her lawn, walks the dog and otherwise carries on life activities. Id. ¶ 4. Having concluded that she has not shown a disability under the Rehabilitation Act, McDonough, therefore, also cannot show that USPS's allegedly objectionable conduct was based upon her disability and the Court need not reach the other elements of her hostile work environment claim.[4]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Defendants' the motion to dismiss and motion for summary judgment, D. 48.

---

[4] To the extent that McDonough raises a claim for disability discrimination separate from the hostile work environment claim, D. 52 at 9, McDonough would need to show that she suffered an adverse employment action. Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003). For the reasons explained above in the analysis of McDonough's retaliation claim, McDonough has not met her burden of showing such an adverse employment action.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge